I wonder if the attorneys who are going to argue would just step up briefly and identify yourselves for the court so we know your names. Good morning. Steve Flom for John Hancock Life Insurance Company. Good morning, Your Honors. Alan Martin for the Department and the Directors et al. Good morning. Mr. Flom, Mr. Martin, as I said, 15 minutes per side, and you, of course, Mr. Flom, you've been here before, and I think you have too, Mr. Martin, have you not? I have. You know the march, so you may proceed. Thank you, Your Honor, and I intend to reserve three minutes for rebuttal, if I may. You may. May it please the Court, Steve Flom for John Hancock. In 1976, the General Assembly created a tax exemption pertaining to insurance premiums received for insurance provided to employees of the State of Illinois. That statute, of course, was contained in Public Act 79-1378. It is absolutely clear what the General Assembly was intending to accomplish when it passed that statute. It was attempting to eliminate any tax, any Illinois tax. You want to establish that through Terry Bruce's statements before the legislature at the time that the exemption was proposed? That's correct. Is that it? Do you have anything else in the legislative history besides Bruce? There was Senator Bruce's statement. Senator Bruce, of course, was the sponsor of the legislation, and he also was the chair of the advisory commission, which is the entity that came up with the idea for the legislation. Was this for any tax or for the privilege tax? It was for any tax. Well, where does Bruce say that? Well, what he says is — Didn't he say we weren't really even thinking about anything else? We were thinking about equalizing the bidding process for in-state and out-of-state insurers, so that neither one would pay the privilege of doing business on group insurance plans should they succeed in having the lowest bid. That's right. What Senator Bruce says, the key language is found in the appendix 108 to our brief. He says that the goal is to treat in-state and out-of-state carriers equally. And they did that. Treat them equally. Didn't they? And the only way to treat them equally is to exempt the out-of-state carriers, not just from the privilege tax, but from the retaliatory tax. Because — Well, where do you get the retaliatory tax intent? There's no language. There are two different statutes, and his words indicate they really weren't thinking about anything except equalizing this process of low bid to conform to the statute, so that when they looked at a bid, they didn't have to concern themselves with whether an out-of-state insurer was including that tax of doing business in their actual bid. That's right, because if the retaliatory tax applies to the foreign insurer, then they would include the retaliatory tax in their bid. And the state would have to back that tax out in order to continue its practice of awarding the contract for the insurance to the lowest net cost to the state. What is the — All right. That was the purpose. All right. That was the reason why this statute was enacted. It used to be that — first of all, it's important to recognize that at that time, the privilege tax was only paid by foreign insurance companies. That's right. States had no privilege tax. Under the state's interpretation of Public Act 79-1378, all the General Assembly would have done was shift the liability of these out-of-state insurers from the privilege tax to the retaliatory tax. What about — Because, again, every state except for, like, five had a tax on their state insurance. But it wouldn't necessarily be — the retaliatory tax wouldn't necessarily be coextensive with the premium tax. It could be less, depending on the differential with Massachusetts. That's correct, Justice Gordon. But the purpose being to make sure that there is no Illinois tax built into the bids that were received from these foreign carriers. Because if there was any — Well, Mr. Baum, I want to direct your attention to this language about the privilege tax under 2154-409. It says that basically the privilege tax is payable, and I'm quoting, together with any amounts due under Section 444. Now, that's the retaliatory tax section, isn't it? That's correct. All right. So, I mean, how do you reconcile the fact that the legislature not only never spoke to the retaliatory tax, this language has remained unchanged. And I don't think there's anything to suggest that somehow the legislature was trying to do away with the retaliatory tax. They weren't doing away with it generally. They were creating an exemption in this situation. The alternative is absurd. The alternative would have made Public Act 79-1378 a useless act. It would have simply shifted the liability from privilege tax to retaliatory tax. It would have required, again, recognizing that the purpose of the statute was to ensure the state didn't have to back any Illinois tax out of the premiums. I don't see how you're losing the purpose just by stating that this exemption was meant to do away with all taxes. I mean, the legislature could have used those words. You're building into the language an exception. You're suggesting that somehow this exemption was meant to do away with the retaliatory tax in situations where out-of-state insurers were bidding on contracts for group health plans for state employees. That's correct. All right. I think you're adding language, though, that doesn't exist. Well, it's not there in black and white. And let me be the first to acknowledge that the General Assembly did a poor job of expressing their legislative intent. But the starting point, of course, for any exercise of statutory interpretation. Is there something ambiguous about the language of the exemption? It's incomplete. It's incomplete. How is it incomplete? It allows for out-of-state and in-state insurers to be exempt from the privileged tax when they're bidding on state employee group health plans. It's incomplete because it doesn't effectuate the legislative intent. You have to start with what was the General Assembly trying to accomplish here? And I've stated it affirmatively, but I think it can also be stated the flip side. What else could they have been trying to do? What would the logic have been to say, all we're going to do is we're going to take this, we're going to exempt these out-of-state carriers from the privileged tax, but we're still going to make them pay the retaliatory tax? What would the purpose of that have been? No one has ever suggested, the state has never suggested that that was their intent. Their intent was to create an exemption. But I don't know where you're getting this intent to do away with all other forms of taxation. Now, the Massachusetts law that we're looking at, when your clients filled out those tax returns for five years, they did not include the actual privileged tax that would have been required on a Massachusetts return. Isn't that correct? That is correct. And they actually substituted Illinois law in preparing a return to reflect Massachusetts law. Isn't that right? That's correct. Isn't that what kind of caused this whole problem, is that John Hancock decided to substitute an actual tax provision in its return? No, Justice McBride, what caused the problem, to be blunt about it, was that this was a case of legislative malpractice. The Illinois General Assembly did a poor job of expressing and accomplishing what they clearly wanted to accomplish. There had been this practice of backing Illinois tax out of the bids submitted from these out-of-state carriers. It was concerned that if you back it out, that it violated the state procurement law. So if any Illinois tax was still charged to foreign insurers, be it privileged tax or retaliatory tax, it would frustrate the legislative intent because then the agency that's picking the carrier would still have to back out the privileged tax. Isn't this a legislative matter? With the suggestion you've just given us, that this is legislative malpractice, to use your own words, aren't you asking us to legislate in this case? I'm asking this Court to exercise the fundamental responsibility of a court with respect to statutory construction to effectuate the legislative intent. Indeed, that very issue was raised by the Court in the out-of-state case. Well, then let's go to the retaliatory tax. Do you agree it still exists? Oh, sure. All right. In general. And do you agree that the language in that tax is not ambiguous? The language? Sure, that's fine. And do you also agree that under the retaliatory tax, we're supposed to look at the tax of one state, compare it to actually borrow the laws of the other state, and see if the other is more onerous? No, actually what you do is you compare tax burden. All right. It's not just, you don't, as the Supreme Court taught us in the Parkinson case, you don't just ignore the realities of the situation and rely on the language of the other state's tax. You look at the actual tax burden. So even if, even if the exemption that was created by Public Act 79-1378 didn't apply to the retaliatory tax as well as the privilege tax, and it did because that's the only way to make sense out of the statute, but even if it didn't, the privilege tax still wouldn't apply here because it is based on the net tax burden, and the evidence is uncontroverted that Massachusetts, while it imposed a tax Is there any language in either of these statutes that's pulling this net tax burden out, other than the case that's from 1944 that was comparing a relatively different statute? Well, there have been many cases, not just from Illinois regarding retaliatory taxes, that recognize the flexible nature of that tax. Certainly there are cases, including very recent cases, that recognize the only legitimate purpose of a retaliatory tax, which is to induce the home state of a foreign insurer to reduce the tax burden that is imposed. Mr. Flom, I'm going to back you up for a little bit, just to give me a little bit of a lesson in the constructs that we're working with here. If the tax is laid out in the bid, the state is still compelled to basically ignore that tax because it's something that doesn't affect the bottom net cost to it, and it also, if it accepts the bid, reimburses the carrier. So what are we really talking about here? Supposing the retaliatory tax is laid out. If, in fact, the state is committed in its performance to accept the bid based on its net cost, bottom line, then the retaliatory tax or any other tax doesn't count. It's not paid if the state doesn't accept the bid, and if it accepts the bid, then the carrier is reimbursed. That's one question that I have. Another question is, and the same would apply, I suppose, to sister states, if they have the same requirements of accepting the bids on the basis of net cost. The other question that I have is a little more general and betrays a lack of sophistication on my part about what's going on. When you're talking about a retaliatory tax, you should really be, and this may be a softball to you, you should be talking about, except I'm not a good pitcher. But if we're dealing with that, shouldn't we be concerned not with the categorical amount of tax charged against one of our domestic carriers, but rather the competitive disadvantage that is formulated through the imposition of the tax? So if, for example, the Illinois carrier in Massachusetts is not paying, if he's taxed, but he's not paying any more than Massachusetts domestic carriers are paying, then what's the theory behind a retaliatory tax, which seems to be a revenge without a purpose? Because you're not looking, then you're actually giving your domestic carrier a competitive advantage over the carriers of the foreign states. That's definitely a softball. It almost falls splatters into a cream by the time it lands, right? But if I can interject at this point, I think it's a legitimate softball based on, I have to admit to a certain bias here. This is a very complex area of the law. But Parkinson was written by Walter Schaefer. I think I can safely say, I know I can say with respect to the man on my left, you're too young to remember Justice Schaefer, Justice McBride. No, I'm not too young. No, I just missed him at Northwestern. I think he retired to the bench. Whenever I have an issue that I'm really struggling with, I sometimes go back and see if Justice Schaefer ever wrote anything about it. And I'm amazed how often he was pressing. And, quite frankly, I think he may have been pressing it in this case with respect to how the state is supposed to interpret those who are in charge with enforcing the retaliatory tax, how they are supposed to enforce it. And I think there's some language in Chapman that supports your position. Now, whether or not it's enough to carry the day, I don't know. But it's certainly, I think, appropriate to consider Chapman. And I just wanted to give you a heads up on the other side, and I'm going to ask you a couple of questions about Parkinson when you step up. Well, I certainly. It's a good case for you, I think. It's a terrific case, and it is the leading decision in terms of how you look at the Illinois retaliatory tax. And it's also. Let me ask you a procedural question that may be more importantly directed at them, but you're probably familiar with it, too. You prepare your tax returns based on what you understand to be your requirements under the Illinois law. And you submit them to the department. They perform an audit. What are their obligations under the audit when they examine your returns? Now, I get the impression that they're saying that all they have to do is to look at the fact that in Massachusetts the privileged tax is intact. It's there. They don't even look behind that. They're not even required to look to the fact that Massachusetts directs those who bid in Massachusetts to, in effect, take the privileged tax and add it on to their bid. They don't look at that. But the question is, should they be required to look at that? If they're familiar with the Massachusetts policy and how Massachusetts treats foreign corporations, which is to say, add the 2% privileged tax on to your bid when you know you're not required to pay it. That's how they still do it, isn't it? That's right. Is that the way Illinois used to do it? Yes. That's what I thought. Yes. And the whole idea of 79-1378 was to – Right. So you didn't have to – But apparently the state is taking the position that they don't have to look beyond the fact that for state government employees. They just say, look, we know you don't have to pay it. Just add it in. But our state is saying – Well, you do have to pay it. It's just that it comes back to the state. Correct. No, no, it doesn't come back to the state. Yes, it does. It comes back to the – No. It's included in your bid. You're getting a tax credit, in effect. You're getting a tax credit in your bid for the privileged tax. You don't pay it. Do I agree with that? Well, I think – No, not quite, right? Massachusetts carrier receives the amount of the tax from the state in the form of premiums and then pays it back in the form of tax. So it's a wash. It's a wash. It's a wash. But to say you're not paying anything is incorrect. Well, it is not incorrect. It's not a tax credit. The net burden is zero. Correct. And the question is, should the state be required to look upon that net burden as zero? Because otherwise, it seems to me that we're just indulging in the fiction here because we don't have an actual – we don't have two oranges that we can compare. What we really should have and what should be in evidence here is an Illinois case who bid in Massachusetts and look at their ultimate net tax burden as compared with the Massachusetts case, Hancock, here. Then you'd be able to say, look, there's no reason for imposing the retaliatory tax because there is no basis for retaliation. They are not being treated unequally. And let me add another – I think that's your argument. Let me add – on my naivete, let me add another question to the mix here. If, in fact, again, the premise is that you're committed to the lowest net cost for premiums and yet so that you have to – the state would be required to bid on the basis of its net cost regardless of the tax, then on what technical basis can the state now keep your deficit on the retaliatory tax for which it would be required to reimburse you in the event you had declared it in the first place? Well, I think Your Honor's question points to the unfairness of this situation. Well, what's the technical basis that prevents this kind of wash from being effectuated on a theory of what? On some damage theory that would perhaps entitle you to restitution, unjust enrichment, whatever other theory there would be, to recoup what they are now requiring you to pay since it would have come back to you in the first instance? I think Your Honor, of course, is right, that if the retaliatory tax applied, it would have been included in the bid and we wouldn't be where we are today. And you would be at a – But it wasn't included in the bid. So the threshold question – Well, doesn't this – would not a verdict, a decision in your favor in the lower court in effect constructively reinstated into the bid? No, I think a decision in our favor simply means that there is – that the retaliatory tax, the Illinois retaliatory tax does not apply. A decision in our favor means – could mean any of three things. But if it's in the state's favor, wouldn't that in effect require – And again, I know that there are many lines to cross. It doesn't operate, you know, that simplistically. But in effect, in its bottom line, if the timing were correct so that limitations periods were not traversed, wouldn't it in effect require the restoration of verdict in favor – the restatement of that tax into your initial bid, which in turn would entitle you to an increase in the premiums to cover the additional tax? Well – So wouldn't it be a wash in any of them? Well, if you're – So what's really at the core here is what I'm trying to find out. Well, I think, Your Honors, if I understand Your Honors' question, I think you're asking if we were to lose this in this proceeding and the court were to conclude that the retaliatory tax did apply to John Hancock, could we have another lawsuit where we seek to recover the additional sum that would have been included in the bid if we had insisted that? I presume you may have problems with limitations periods, et cetera. I mean, I'd like to think that we'd have recourse, but I would – I'd be reluctant to – I can't say I'm sanguine about that, Your Honor. There's statute of limitations. There's potentially the voluntary payment doctrine issue. Well, there's no voluntary payment if you get a court order or a complaint. The money's in the protest fund right now. The money's in the protest fund, and as long as you can litigate, the protest fund remains sacrosanct, I assume. Incidentally, you raised – one of your backup arguments is that if they've interpreted the statute correctly, the retaliatory tax statute correctly, then it may really – and this is, again, a problem of the burden of proof with respect to showing the Massachusetts system that it's unconstitutional as applied. Okay? That's one of your backup arguments. To the retaliatory tax. And that was in your original complaint, wasn't it? Yes. I mean, that was your backup argument. Where is the attorney general for the state of Illinois? You've challenged the constitutionality of a very important taxing statute, and I see some very able lawyers over here, but I don't see the AG. That's interesting, isn't it? I think that's probably – Isn't the AG required to be given notice of these cases? For constitutional challenge as applied. Particularly for a tax statute when we're talking about $6 million here in this case alone? You're asking whether – I thought somebody was supposed to give them notice, either the department or financial – Under something like Supreme Court Rule 19. Oh, well, that answers my question. They are here, but it doesn't clear from your briefs that you're here in your capacity as an assistant attorney general. I'm glad to hear that. Okay, thanks. And applying the – if the retaliatory tax actually did apply here, it would be unconstitutional because it would not serve the only constitutionally permissible purpose. Now, I understand your argument, but, again, I have one other question, and then I'm going to shut up because I think we need to hear from the other side, and I think – I think we do, too. And that is this burden of proof with respect to – and this seemed to be a problem for the trial judge in this particular case, too. Who has the burden of establishing initially, and what is your burden in establishing that the Massachusetts law doesn't trigger the retaliatory tax? Do they have to investigate that, or do you have to give them sufficient evidence in advance in your complaint? Well, I think the way that it would work at trial is that they would have the obligation to – But these are cross motions for summary judgment, basically. Correct. So it's different on summary judgment than it is at trial. At trial, ultimately, it would be our burden to show that the justification offered – But they've got to show something in their motion for summary judgment. They asked for judgment on the pleadings, didn't you? They did. There's a combined motion for pick-your-choice judge, judgment on the pleadings, or summary judgment. That's right. And you kind of dropped it. Yeah, but that doesn't mean we have to agree, does it, in any event? In terms of the burden on summary judgment, for us to win, we would need to establish that uncontroverted evidence – We're leaving aside the statutory interpretation issue, the 79-13-78 kind of exemption for the retaliatory tax, and does the retaliatory tax apply? In terms of the constitutionality of the statute as applied, we would need to establish that there was no net tax burden in Massachusetts. Right. That would be a burden for us to get summary judgment. Likewise, for the State to get summary judgment, it would have been their burden on summary judgment to prove something that they wouldn't have to prove at trial. That is, that, in fact, there was a tax burden that Illinois insurers would experience. Is the language of the statute – this is just my last question – is the language of the statute that there's no net tax burden, or is it whether the foreign statute requires the payment of taxes? Is this about tax burdens, or is it about whether one state requires the payment of premium taxes and the other does not? Well, Your Honor, Section 444 uses language about talking about things that are onerous or more onerous or burdensome. Right. And the language that's used is not crystal clear. It requires judicial interpretation. Justice Schaefer is referring to – Now we have to get back to Justice Schaefer in that one sentence. It's really just one sentence, isn't it? That's right. In his opinion. And what citation follows that sentence? Well, it's the Supreme Court of the State of Illinois. He doesn't cite to anybody. Oh, okay. But what he says is this. There is no citation to anybody. But what he says is this. It was urged upon them that under Germania, we are committed to the view that in determining the applicability of the retaliatory provisionary, we are to look only to the language of the foreign statute, which is apparently what they did. They looked only to the fact that, hey, Massachusetts imposes a premium tax. We don't. Therefore, the retaliatory tax is appropriate. There's a comma after that. And he goes on to say, and may not appraise the way in which it will in fact operate. Burdensome. And then he says, we do not so interpret the Germania case. Now, immediately, that's a pretty slim read that you're hanging your argument on. But given the author, it carries some weight, doesn't it? And I really ask him about it. Anyway, that's all I have. As usual, Justice Ginsburg, you've got it right. Thank you. Without citation to any authority. Well, usually you can find some somewhere to support what you're trying to say. That's the whole idea behind all this, isn't it? Citation to authority. Well, I was going to say one more question for you. It's one thing to interpret something, but it's certainly good to have something to back up that interpretation. If you had an Illinois insurance carrier who had been doing the same thing in Massachusetts that you were doing here in Illinois, and assuming that your volume and your premiums and everything were the same, your argument is basically that at the bottom of the day, the Massachusetts would never impose a retaliatory tax, and they would be basically equal, because of what the net result is at the end of the day. That's correct. They get to keep the $6 million, and you have to give it back. It's your bottom line. It's your profit line. It's really not your tax line, because you do pay the tax for doing business in Massachusetts if you're going to bid on a state group health plan. So there really is a tax burden, but there's no – on your bottom line, your profit is where you want it to be. So that's kind of taking language and making something not so onerous, because your profit is – I would say that there's no burden if you're being reimbursed for the tax that you're paying. But you still have to pay the tax. That's correct. At the end of the day, it's on your returns. You had to pay that privilege tax. That's correct. And our argument, of course, is that there's no burden if you're getting it back from the state. Well, the trial judge here thought that it impedes your bidding opportunities. Yes, the trial judge did say that, and I'm at a loss to understand how that would be the case. Everyone is treated the same way in Massachusetts. There's no distinction between in-state and foreign carriers. Everybody builds the full amount of the Massachusetts privilege tax into the bids that they submit for the Massachusetts State Insurance Program. There's no competitive disadvantage. There's no burden. There's no obstacles, nothing. And there's really nothing that Massachusetts could do to make it easier on Illinois insurance companies that wanted to provide insurance to the Massachusetts State Insurance Program. Well, couldn't they legislate just like our legislature did? And couldn't they exempt every insurer from paying any premium tax or privilege tax on – They could have. Yes, they could. So then their statutes would be mirroring each other. That's correct. They could do that, but the point is, I think what's significant, is that that would not be any less of a burden on Illinois or other states' insurance because their bottom line, as Your Honor said, is the same. So how does that help? Well, I don't know that they could legislate or any single state could legislate only as to one single other state. Whatever they would do would have to have universal application and not every state would be in the same position. But they should have adopted what amounts to the Bruce Amendment in Massachusetts, too, and then we wouldn't be here. Yes, I think that's what I was saying. We wouldn't be here if they adopted the Bruce Amendment in Massachusetts. Apparently the legislature, with respect to the Bruce Amendment, were concerned about bidding hanky-panky with respect to the way the system works where you build into your bid the privilege tax. Because, you know, some people might do it, some people might not claim they're doing it, whatever, and that it wouldn't be very – the person who has to make the decision about which bid to take wouldn't be able to determine which companies were really playing by the rules and which companies weren't. I guess that was one of the reasons that Bruce and the legislature were concerned that the government, actually, or the people who were actually opening and deciding on the bids would get into trouble. Because it would be very hard to explain to the public why you're taking the higher bid. Right, especially in light of the Illinois procurement law. Exactly. Because it would look like the higher bid was something that should have been taken. Right. And that's why they needed to make sure that any Illinois tax was backed out so that they could take – I don't know how they solved the problem in Massachusetts, because it would seem to me they'd have the same public image problem with respect to it. Not sure what their – well, I guess the issue there is that all carriers pay the tax. So there was no dichotomy between in-state and out-of-state carriers in Massachusetts. So it wasn't as much of an issue there. Okay. Thank you. Thank you. Special Assistant Attorney General, huh? Okay. Specially appointed special assistant. No, because I think the departments are required when there's a constitutional challenge. They have to notify the agency. They have been notified and they have been involved, but since it was specific to insurance – They want somebody who knows really what they're talking about. And that's why I was appointed to be involved with this. May it please the Court, Alan Martin again for the department and the director. I think we hit the point at the very outset, and that is looking at what the retaliatory tax provides. And its real question is, do the laws of another state present a more onerous and burdensome tax than Illinois does? Not tax burden. You don't look beyond the tax. Right. That's it. That's what the retaliatory tax provides. Well, should they be looking at the tax or should they be looking at the question of whether it's onerous, which should in turn be determined by the competitive disadvantage that it offers to a domestic carrier? And if so, where is that competitive disadvantage? Well, what we're trying to do and what's been upheld in some light by the Illinois Supreme Court, the U.S. Supreme Court in various decisions is the whole purpose is to reduce tax burden, the onerousness of taxes. Simplify, keep it straightforward, not having to try to decipher what is happening, what's in there and what's not out there. And I think Hancock admitted during its argument that the exemption is not in the retaliatory tax. That Hancock is reading something in there that you don't find in the statute itself. If the Illinois legislature wanted to have that exemption in the retaliatory tax, they could have put it there. That's what legislation is all about. They could have taken the language that I was quoting from Parkinson and incorporated it into the retaliatory tax itself. Absolutely. Absolutely. And it's not there. And when you hear counsel saying that this is a matter of legislative malpractice, that's actually asking the judiciary to come here and legislate. That's not what the legislature intended. The legislature intended to have this simplified. If you look back at the trial. Mr. Martin, what about Mr. Flom's argument that the statute isn't being given its – But we are because the simple question is the Illinois legislature and the retaliatory tax statute said look at other jurisdictions and other states. Do they or do they not impose a more onerous and burdensome tax on Illinois insurance companies? Do they look to see whether the burden is greater for Illinois carriers than it would be for their own? Does there have to be a disparity in treatment or do you simply look at the categorical amount of the tax, even though that same tax is paid by everyone, including their own carriers? Both, really. Is it more onerous or is it not? That tax exists in Massachusetts. I have difficulty assimilating that with the notion of a retaliatory tax that has some cogent basis. To me, that's fraught with at least the constitutional question, whether you simply can look to the absolute amount of the taxes imposed by the other state, particularly where that tax doesn't ultimately impact the carrier to the extent that it would be reimbursed through the premiums. That's the real question is are we going to be deciphering that on a case-by-case, state-by-state basis because that we don't have here. Is it as simple as maybe perhaps the trial court thought it was, that in Illinois we have an exemption on the privilege tax? In Massachusetts, everyone pays the privilege tax. Therefore, the payment of taxes in Massachusetts is more onerous than having an exemption for that same privilege in Illinois. Is it that simple or not? I don't think it was that simple. That's kind of how it came down in the order, isn't it? I think what the court said, too, was, look, if Nebraska had the same scheme as Illinois, it'd be simple, we'd understand, and we'd have the same outcome. And that's what we're trying to do. What do you mean if Nebraska had an exemption? It had the same exemption as Illinois. It had the same statute. Isn't that like saying if Massachusetts had the same exemption? With the retaliatory statute. But the retaliatory statute says if Massachusetts' law is more onerous, it's more burdensome, then this court is then trying to figure out in a bidding process what is being included, what's not being included, is it calculated correctly, is it not calculated correctly, all those difficult pieces. So it's basically to avert the administrative burden. Is that what you're saying? Well, I'm saying that is one aspect. So maybe it wasn't just questions of law. What tangible differential is there between an exemption and a reimbursement? Well, in the first instance, the question really is, in legislative intent, is it more onerous? So if you're going to have to go through the process of trying to figure out whether or not something is built in, not built in, is it there, is it not there, the whole purpose of the retaliatory tax is to say we want a simplified, easier, more straightforward tax burden, and we want to encourage that and incentivize that in all other states. So we don't want in Illinois. So we're not basically in the retaliatory tax, we're not legislating substance, we're legislating process. I think we're legislating both. Well, where is the substance of the difference? I'm still groping for it. I was groping for it with your opponent, I'm groping for it here. No, I understand. But where is it that we don't have necessarily a substance of difference? I mean, what's the unspoken fiction that is involved here between in differentiating between an exemption and a premium reimbursement? Because I believe that in Illinois, if the legislature really believed that there was going to be a substantive difference beyond just an administrative difference also, that it would have legislated this into retaliatory tax. It did not. It kept that separate. So it was not viewing it both substantively, neither substantively nor administratively, as providing the same situation as for an Illinois company. Now, if that retaliatory tax, again, were not reimbursable to the foreign carrier, then it would definitely present constitutional problems, either under the uniformity clause or perhaps the interstate commerce clause, because then you'd be picking on the foreign carrier, wouldn't you? So you ultimately have to get back to the fact that there's no difference. So what are we really litigating here? I know it's something. I'm not trying to say it's something. It's worth $6 million. That's what we're litigating. That's what we're talking about. Well, but is that $6 million going to stay in the state's pocket or not? And the question is, again, what does the statute say? What is the purpose of the statute? The statute says, does the other state present a more onerous and burdensome tax scheme? It does. And they did not borrow. What they did was they substituted the Illinois statutory scheme in place of the Massachusetts scheme, which is not what the retaliatory tax provides for. So they deviated from the statute, and now they're coming and saying it's the same. It's not the same. And it's more onerous. It's more burdensome. It's more onerous and burdensome both, I believe. And, you know, we're not just talking Massachusetts here. I mean, this is something that has to apply beyond just Massachusetts. You have a substantive aspect to it. You have an administrative aspect to it. And if the Illinois legislature wanted to have that exemption apply within the retaliatory tax, they could have done that. I mean, that is the simplest, easiest way to get to that result. That's not here. And what has Hancock said? Hancock has said that we are interpreting an exemption in there that the Illinois legislature didn't. At the end of the day, are the courts going to be bringing in legislatures here one at a time to, you know, ask them under testimony what they really thought they were going to try to do? I'm glad you asked that question because this is a summary judgment motion now, so we don't really get to test any of what you were just talking about. But let me read you something from the trial judge's final order. It's here before us on cross motions for summary judgment. And all parties agree the facts are not disputed. In this situation, Hancock is required to present a factual basis negating the asserted justification. The asserted justification is what you've articulated very well. The asserted justification for imposing the retaliatory tax is that Massachusetts has a premium tax in place. Illinois does not. Okay? And she quotes Allegro Services. And then she says, Hancock has not met its burden of presenting a factual basis to rebut your asserted justification. But they have earlier in their complaint, in two different paragraphs, asserted that Massachusetts allows the insurer to build a premium tax into its bid. Okay? Thus asserting that the impact is the same in Illinois as it is in Massachusetts vis-a-vis the bottom line. Now, why isn't that something they're entitled to at least get to the trier of fact on so they can take their assertion in their complaint and prove it? Well, they obviously haven't done it in their motion for summary judgment. They have just asserted this is how Massachusetts does it now. This is how Illinois does it now. The practical result, according to them, is the same. If the practical result and the impact financially on the insurers is the same, then there's no basis for imposing the retaliatory tax simply because there's a statute in existence. Why doesn't that get them at least to a factual dispute beyond summary judgment? The only problem with that, and I'm sorry. Well, you can ask it. No, I'm not going to ask it. That's not fair. I appreciate the fact that you fleshed out my own curiosity and my own questions. But the one response could be by the same token, what is it that John Hancock is protesting if it, in turn, would be reimbursed for its retaliatory tax? I mean, it's not going to sustain a net loss either way. The same argument that would apply towards attempting to vitiate the retaliatory tax in the first place would be reflexive in the sense that, by the same token, no loss is incurred if there is contemporaneous declaration of the retaliatory tax in the bid proposal. Correct. And the only other point that I would add is, but we're still, what are we really dealing with? There was an attempt to, just so we're clear, on reconsideration to try to add an affidavit. I don't see where that affidavit helps in that much. At all. Because I didn't mention that to him, but I'll give him a chance to respond. The four-day affidavit doesn't say anything about Massachusetts. It doesn't explain anything. And, again, I still think it's taking us aside because, at the end of the day, we're looking at what the statute provides, how the statute operates. That's the language. The ordinary construct is that if this was to be exempted, it would have been done so within the retaliatory tax statute. It was not. And, therefore, Your Honors, I respectfully request that the trial court's rulings be upheld in their entirety. Thank you. Okay. Mr. Flom, you have the final word. Thank you. I guess I've been waiting in vain both this morning and also throughout the course of this litigation. I've been waiting to hear an explanation from the defendants about what on earth was Public Act 79-1378 really intended to do. I hear arguments that are just based on the statutory language, but that ignore what was the purpose. Because there's no dispute, and certainly we didn't hear Mr. Martin just dispute the fact. I thought the purpose was to try to get this whole thing in line with the bidding process so that there was no violation of the law in terms of selecting the lowest bidder. I thought that was the intent. That's correct. That since Illinois insurers did not have to pay the privilege tax on bids for group health insurance plans, that other out-of-state insurers would also not have to pay that privilege tax so that when their bids were submitted, there wouldn't be any of this artificial privilege tax built in. I thought that was the idea, to put them on equal footing. I don't know how that then translates into a change in the retaliatory tax legislation. Maybe the legislation was sloppy. I don't know. Maybe they intended what you're saying to do away with any kind of tax for out-of-state insurers bidding on group health plans. But I don't see where that's in the language, and I don't see how that's in the language when Bruce spoke at the time that the legislation was created. He said we had no intent to effectuate any other legislation. The alternative would be that all that the Act did was shift the liability of foreign carriers from the privilege tax to the retaliatory tax because they'd still have to pay, right? Yes. Carriers from foreign countries would still have to pay. Isn't it possible that that's just in effect and, I mean, we're stuck with it? There's no intent to do anything other than equalize the bidding process because they didn't want this artificial privilege tax being placed into bids from out-of-state insurers when in-state insurers didn't have to do that. We would be stuck with it, Your Honor, if it didn't frustrate the legislative intent. Because if there's still a retaliatory tax liability and out-of-state carriers that are bidding on the retaliatory tax, they're going to include it in their bids, and then the state of Illinois would have to back it out of those bids in order to award the contract to the lowest bidder, and that undermines the entire purpose of the Act. The state has never offered another justification. Why would the state have ñ why would the General Assembly have simply wanted to shift the liability from the privilege tax to the retaliatory tax? Well, for one thing ñ You're right. That's partly the strongest argument. But as you're talking, Mr. Flom, I'm wondering to what extent, how pervasive that premium tax would be among other states, because this piece of legislation is meant to apply to 50 states, not just to Massachusetts. That's correct. And we know that there are only five other states, even today, that have statutory exemptions that are comparable to what Illinois put on the books with 79-1378. So that means that carrier ñ and these aren't exactly powerhouse states in terms of insurance companies, states like New Mexico, Mississippi, no disrespect meant to those states, but that's not where our country's insurance companies are. So it would have simply shifted the liability, it would have still forced the agency to do this very same thing that led the statute to be passed in the first place. It doesn't make any sense. And it's not judicial legislation when you're effectuating it. Now, how many of the states ñ to what extent are the states all committed to look to the net lowest bidder, as opposed to taking the total package into account? I don't know, Justice Gordon. But I do know that for purposes of the application of the retaliatory tax here, all that matters is Massachusetts, John Hancock's home state. And there the uncontroverted evidence establishes that there is no net burden because Massachusetts takes with one hand and gives it back. And gives it back. And it gives it back. And again, this is probably more appropriate for Mr. Martin, the question directed to him, because this goes in, again, to the burden on the bureaucracy in any given state. They deal with tax credits all the time. That's nothing unusual. But here it would appear that they aren't even going to consider your argument about the Massachusetts procedure in determining whether or not they ought to impose the retaliatory tax. They're not even going to look behind the language. And this is where I think that, you know, the unconstitutional as applied bubbles up. Because they say in their very able brief, there is no dispute that Illinois insurers operating in Massachusetts will have to pay higher taxes than Massachusetts insurers operating in Illinois. So there's no dispute about that. But they don't add the fact that, yeah, but then they get the money back from the state of Massachusetts for having paid it. And that, it seems to me, is something that if they know about that, if the bureaucracy in Illinois knows that Massachusetts, although they impose the higher tax, gives it back, they have a policy decision to make with respect to their retaliatory tax. Because Massachusetts may turn around tomorrow and say, what Illinois is doing to Massachusetts insurers isn't right, and we're going to figure out some way to do it to Illinois insurers. And certainly a decision by this court, consistent with Justice Schaffer's opinion in Parkinson, that you look at the net tax burden, their practices will change. I'm confident that our state agency will follow the law as declared by this court. Mr. Martin makes a very good point. Is this a judicial decision that needs to be made, or is it a legislative decision? And just as in the Gill case that we cite in our brief where that suggestion was made, you'll recall that was an instance where the statute provided for a fee that was to be collected by county and circuit court clerks and paid to some fund for domestic violence. And the Supreme Court gutted the language. And they said, no, we're going to interpret this to mean that you pay it to the county treasurer. And the treasurer then pays it to this fund. And in response to the suggestion that that was judicial legislation, the court said, no. It's not judicial legislation when we're effectuating the legislature's intent. And that's what we're asking. That's all that we're asking the court to do, effectuate the legislative intent. A wooden interpretation, which is what the state is asking for, would frustrate the legislative intent. And in situations like this, that intent needs to be effectuated. So we would respectfully ask the court to vacate the judgment below, to remand with instructions, to enter a summary judgment in favor of John Hancock, or at a minimum to remand for further proceedings in accordance with the court's opinion. Mr. Flom, Mr. Martin, we want to thank you both. The briefs were excellent. The oral argument and presentations were very professional. The case will be heard.